IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 1, 2011

## STATE OF TENNESSEE v. JASON R. McCALLUM

**Direct Appeal from the Circuit Court for Dyer County**
**No. 09-CR-142      Lee Moore, Judge**

**No. W2010-01075-CCA-R3-CD  - Filed May 5, 2011**

The defendant, Jason R. McCallum, was convicted by a Dyer County Circuit Court jury of the sale of more than 0.5 grams of a Schedule II controlled substance, methamphetamine, within 1000 feet of a school, a Class A felony. He was sentenced to eighteen years as a Range I offender. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

James E. Lanier, District Public Defender; and Patrick McGill, Assistant Public Defender, for the appellant, Jason R. McCallum.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Renee Creasy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The case relates to the defendant's arrest for the sale of methamphetamine in a drug-free school zone. At his trial, Sergeant Todd Thayer with the Dyersburg Police Department testified that he worked in the Narcotics Unit and that he used confidential informants to build cases against those who sold drugs. Sergeant Thayer described the procedures the unit used to develop and work with confidential informants and explained how controlled drug buys were conducted.

Sergeant Thayer testified that the informant used in the defendant's case was an individual Sergeant Thayer had arrested for selling cocaine and who agreed to work with the police to avoid prosecution on drug-related charges pending against him. He had worked as a confidential informant for over a year and had "made more than fifty undercover cases . . . probably closer to 60, 70 cases."

Sergeant Thayer testified that in October 2008, the informant called and told him that he had arranged to buy $200 worth of methamphetamine from the defendant. Sergeant Thayer met with the informant and placed an audio transmitter and video recorder on his person and supplied him with the "buy money." The informant's person and vehicle were searched to make sure he had no other money, illegal narcotics, or weapons in his possession. The informant then made several calls to the defendant's number, and eventually the defendant called back and the call was recorded. The officers and the informant left their meeting spot, with the officers driving behind the informant in an undercover car. The informant drove to the defendant's residence on East College Street in Newbern, and the officers parked out-of-sight across the street where they listened to the transaction over the audio equipment.

Sergeant Thayer testified that after the transaction was completed, the officers met the informant at the meeting location and the informant turned over the methamphetamine. The informant's person and vehicle were also searched again. Sergeant Thayer identified the evidence package that contained the methamphetamine he recovered from the informant on October 14, 2008. Sergeant Thayer stated that after the defendant was arrested, he and Investigator Chris Gorman met with the defendant and his attorney at the Dyer County Sheriff's Department, and the defendant "admitted to selling the substance to [the informant] on that date."

On cross-examination, Sergeant Thayer acknowledged that during his meeting with the defendant and the defendant's counsel, the defendant insisted that "the stuff [he] sold [the informant] wasn't meth." Sergeant Thayer acknowledged that he had never arrested an African-American for making methamphetamine, but officers had "bought meth from several African[-]Americans . . . in undercover buys." Sergeant Thayer stated that the informant's prior drug charges were cocaine-related and not methamphetamine-related.

Thomas Langford, a property evidence technician/investigator with the Dyersburg Police Department, testified that he handled the evidence in this case. He established the chain of custody, including his removing the evidence from the storage locker and taking it to the Tennessee Bureau of Investigation ("TBI") Lab in Memphis. After the evidence was returned from the TBI Lab, Langford opened the evidence package in the presence of an investigator from the public defender's office to retrieve a sample to mail to a private lab

for independent testing. On cross-examination, Langford testified that it was not routine to have independent testing done, and, in fact, this was "the first time [he had] seen it done."

Investigator Chris Gorman with the Dyer County Sheriff's Department testified that he assisted Sergeant Thayer with the defendant's case. Investigator Gorman stated that he met with the informant prior to the transaction and set up the monitoring equipment in the informant's vehicle. He also searched the informant's vehicle beforehand to ensure that no contraband or money was present. After the transaction had been completed, Investigator Gorman searched the informant's vehicle again and removed the monitoring equipment. Investigator Gorman field-tested the substance once he and Sergeant Thayer returned to the police station, and "[i]t came back positive for methamphetamine." On cross-examination, Investigator Gorman acknowledged that during the meeting with the defendant and his counsel, the defendant insisted that the substance he sold "was not real."

The confidential informant testified about his criminal background and his decision to work as an informant. He knew the defendant "briefly through school" and recalled that, sometime in October 2008, he "bumped into [the defendant] at a store and [they] exchanged conversation." During this conversation, the defendant asked the informant if he could get him some cocaine and informed the informant that "he messed with meth . . . if [they] could trade out[.]" The defendant then gave the informant his phone number.

On October 14, 2008, the defendant informed the informant that "he was running short and if [the informant] wanted . . . what . . . [they] had talked about then [he] probably needed to come get it." The defendant told the informant that he had "an eight ball," or "[t]hree grams," of methamphetamine, but that "he was running short and it wasn't a whole eight ball." After this conversation, the informant contacted Sergeant Thayer and Investigator Gorman and met with them to prepare for the drug buy from the defendant.

The informant testified that he called the defendant while in the officers' presence, but the defendant did not answer his phone. However, the defendant called the informant back, and the informant "asked him was he still, was he ready for me. And he replied yes and we was to go do business." The officers recorded the conversation, and the audio was played for the jury.

After the phone call, the informant went to 117 College Street in Newbern, and the defendant approached the passenger's side of his vehicle and "handed [the informant] the meth and [the informant] handed [the defendant] $200." The informant then returned to the "meeting spot" where he met the officers and they turned off the equipment and "g[ot] the package." The video of the transaction was played for the jury. The informant identified the bag of the substance that he received from the defendant.

On cross-examination, the informant admitted that he had previously sold cocaine to the defendant's ex-wife. The informant acknowledged that the package of substance the defendant sold him looked unusual. However, he elaborated on redirect that it looked unusual because he had never "deal[t] with meth" and only seen it on less than five occasions.

Special Agent Dana Parmenter, a forensic scientist with the TBI Crime Lab, testified that she analyzed the evidence submitted in this case and determined that it weighed 1.6 grams and contained methamphetamine, a Schedule II controlled substance.

Carmen Cupples testified that he managed the Geographic Information System ("GIS") for the City of Dyersburg. Cupples used the GIS system to produce a map of 117 East College Street. The map showed that the address was "across the intersection" from Newbern Elementary School. Cupples said that the distance between the property lines of the two locations was 145 feet. On cross-examination, Cupples admitted that he never went out and personally measured the distance between the school and the location where the transaction occurred.

On redirect examination, Cupples explained that the mapping system was based on an aerial photograph and that the system met the National Mapping Accuracy standards of having a horizontal accuracy of two to three feet. He noted that there was a system of checks and balances in place to ensure the accuracy of the system. Cupples said that he had frequently been by Newbern Elementary School. He testified that he had drawn a line on the map showing the College Street address to the school. The line showed the distance from the property boundary of the residence to the corner of the school building as 435 feet. The measurement between the physical structure at 117 East College Street to the structure of the elementary school was 390 feet.

Testifying on behalf of the defense, Amanda McCallum, the defendant's wife, testified that she came home from work on October 14, 2008, and saw her prescription bottle for Prozac sitting empty on the dresser and "broken capsules" lying around. When she asked the defendant about her pills, he responded that he had used them to make some money. Mrs. McCallum asked the defendant how the pills made him money, and he explained that he "took [her] Prozac and . . . mixed it with fingernail polish remover . . . [and] sold it." Mrs. McCallum and the defendant argued, and she told him that his actions were "irresponsible," but the defendant stated, "I've gotta make money somehow."

The defendant testified that he saw the informant while pumping gas at a gas station. The defendant did not recognize the informant, but the informant recognized him and they began talking. The informant asked the defendant when he had gotten out of prison and "if

-4-

[he] was still messing with meth." The defendant thought that the informant's question was odd because they had never had prior drug dealings and "[t]here just ain't very many African Americans . . . messing with meth."

The defendant testified that his ex-wife and the informant were friends, and the informant had previously sold "her fake crack and stuff like that, [so the defendant] figured it was [his] chance to get [the informant] back." The defendant told the informant that he could get some methamphetamine and suggested that, if the informant could get some cocaine, they could "do some swapping out." The informant told the defendant that he would call him when he got paid or "he got his hand on some dope."

The defendant testified that the informant called him a few days later asking if the defendant "could . . . still get that," and the defendant told the informant that he could. The defendant explained, however, that he did not have any methamphetamine, so he had to think of a way to "make that $200 . . . or make that cocaine or whatever he had." He elaborated that he "just wanted to get high or get some money to get high." The defendant looked around the house, found the Prozac, opened the capsules, and put the contents in a baggie. He realized the color would never pass for methamphetamine.

The defendant testified that the informant "kind of stalled . . . for about thirty, forty-five minutes," but then called back and asked the defendant if he "still ha[d] it." The defendant was suspicious but went ahead with the transaction because he "didn't know it was illegal to sell Prozac." The defendant stated that he was aware that the State's lab test and the independent test obtained by defense counsel "[s]aid [the substance] was methamphetamine." However, the defendant thought "[t]here's no way Prozac can test as methamphetamine." The defendant denied selling methamphetamine to the informant.

After the conclusion of the proof, the jury convicted the defendant as charged of the sale of more than 0.5 grams of a Schedule II controlled substance, methamphetamine, within 1000 feet of a school.

## ANALYSIS

The defendant challenges the sufficiency of the convicting evidence, arguing that the State failed to prove that the sale occurred within 1000 feet of a school and that he did not have the *mens rea* to commit the offense because he believed he was selling Prozac mixed with nail polish remover. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

-5-

(1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of selling more than 0.5 grams of a Schedule II controlled substance, specifically, methamphetamine. See Tenn. Code Ann. § 39-17-417(a)(3), (c)(1) (2006). Although the offense was a Class B felony, id. § 39-17-417(c)(1), he was charged and found guilty under the Drug-Free School Zone Act, which raised the conviction class to a Class A felony. See id. § 39-17-432(b)(1). The Act defines this enhanced drug offense as "[a] violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park[.]" Id. As required, the indictment specifically alleged that the sale occurred within 1000 feet of the type of school prohibited in the statute. See State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).

The defendant first argues that "the distance between where the transaction occurred and the school was never measured. There is nothing in the record to establish the reliability of the device used [to] guess the distance." However, the GIS Manager for the City of Dyersburg, Carmen Cupples, testified that the GIS system he used to map the area of the transaction was based on an aerial photograph and property assessment data. Cupples said that the system met the National Mapping Accuracy standards of having a horizontal accuracy of two to three feet and that there was a system of checks and balances in place to ensure the accuracy of the GIS system. In addition, Cupples testified that he was familiar with the location that he mapped and had been by Newbern Elementary School "[q]uite frequently." The map showed that Newbern Elementary School was "across the intersection" from the defendant's address and that the distance between the property lines of the two locations was 145 feet and the distance between the two physical structures was 390 feet. This evidence was heard and assessed by the jury, and the jury determined that the State proved that the transaction occurred within 1000 feet of a school. The evidence was sufficient for a rational trier of fact to make this determination.

The defendant also contests the sufficiency of the evidence based on his assertion that the substance he sold to the confidential informant was not methamphetamine. The defendant testified at trial that the substance he sold to the informant was Prozac mixed with nail polish remover. The police witnesses also testified that the defendant told them during an interview that the substance was not methamphetamine. However, it was the jury's prerogative to disbelieve the defendant's claim based on the fact that the substance tested positive for methamphetamine by both the TBI lab and an independent lab. Based on this evidence, viewed in the light most favorable to the State, a rational trier of fact could conclude that the substance sold by the defendant was what the defendant told the informant he was selling to him – methamphetamine.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE